IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LUPITA VARGAS,

        Plaintiff,

      vs.                               Civ. No. 20-647  JFR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 20)[2] filed December 29, 2020, in connection with Plaintiff's *Motion to Reverse and Remand for Rehearing With Supporting Memorandum,* filed March 1, 2021.  Doc. 23.  Defendant filed a Response on June 2, 2021.  Doc. 27.  Plaintiff filed a Reply on June 16, 2021.  Doc. 28.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is well taken and shall be **GRANTED**.

### I.  Background and Procedural Record

Plaintiff Lupita Vargas (Ms. Vargas) alleges that she became disabled on February 6, 2015, at the age of forty-one and nine months, because of chronic abdominal pain, anxiety and

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Doc. 15.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 20), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

vocal cord dysfunction.  Tr. 67, 175, 201.  Ms. Vargas completed high school in 1995.  Tr. 202.

Ms. Vargas worked as a kitchen and park server for a summer food program and as a preschool

and kindergarten instructional assistant.  Tr. 43, 202, 217.  Ms. Vargas stopped working in 2015

because of her medical problems.  Tr. 201.

On February 13, 2017, Ms. Vargas  protectively filed applications for Social Security

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42

U.S.C. § 401 *et seq*. and for Supplemental Security Income ("SSI") under Title XVI of the Act,

42 U.S.C. § 1381 et seq.  Tr. 15, 36-38, 177-183.  On February 22, 2018, Ms. Vargas's

applications were denied.  Tr. 66, 67-80, 98-101.  They were denied again at reconsideration on

May 21, 2018.  Tr. 81, 82-96, 108-111.  Upon Ms. Vargas's request, Administrative Law Judge

(ALJ) Jennifer M. Fellabaum held a hearing on May 13, 2019.  Tr. 34-63.  Ms. Vargas appeared

in person at the hearing with attorney representative Katherine O'Neal.[3]  *Id*.  On August 20,

2019, ALJ Fellabaum issued an unfavorable decision.  Tr. 15-27.  On May 4, 2020, the Appeals

Council issued its decision denying Ms. Vargas's request for review and upholding the ALJ's

final decision.  Tr. 1-6.  On July 2, 2020, Ms. Vargas timely filed a Complaint seeking judicial

review of the Commissioner's final decision.  Doc. 1.

## II.  Applicable Law

### A.      Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance

---

[3] Ms. Vargas is represented in these proceedings by Attorney Laura Johnson.  Doc. 1.

benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4]  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b).

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.      **Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  In undertaking

4

its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency.  *Langley*, 373 F.3d at 1118.

### III. <u>Analysis</u>

The ALJ made her decision that Ms. Vargas was not disabled at step five of the sequential evaluation.  Tr. 26-27.  The ALJ determined that Ms. Vargas met the insured status requirements of the Social Security Act through September 30, 2020, and that she had not engaged in substantial gainful activity from her alleged onset date of February 6, 2015.  Tr. 17. She found that Ms. Vargas had severe impairments of depression, anxiety, helicobacter pylori chronic gastritis/gastroparesis, and degenerative disc disease.   Tr. 17.  The ALJ also found that Ms. Vargas had nonsevere impairments of vocal cord dysfunction, hemorrhoids, right ovarian cyst, asthma, hiatal hernia and endometriosis.  Tr. 18.  The ALJ determined, however, that Ms. Vargas's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 18-20.  Accordingly, the ALJ proceeded to step four and found that Ms. Vargas had the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following additional limitations: The claimant can occasionally stoop, crouch, kneel, and crawl; can never climb ladders, ropes, or scaffolds; can never be exposed to unprotected heights or hazardous machinery; and can have no concentrated exposure to environmental irritants or extreme humidity or wetness.  In addition, the claimant can perform SPV 1 or 2 level work, with no fast-paced production work.  She can tolerate occasional changes to the work setting and can occasionally interact with the general public, co-workers, and supervisors.

Tr. 20.  The ALJ determined that Ms. Vargas could not perform any of her past relevant work, but that considering Ms. Vargas's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.  Tr. 25-27.  The ALJ, therefore, concluded that Ms. Vargas was not disabled.  Tr. 27.

In support of her Motion, Ms. Vargas argues that (1) the ALJ erred by failing to account for all of the limitations found by consultative examiner Richard Fink, Ph.D.;  (2) the ALJ erred by failing to include a necessary mental function-by-function assessment; (3) the ALJ's RFC is not based on substantial evidence because the ALJ failed to account for Ms. Vargas's subjective allegations of pain and other symptoms; and (4) the ALJ failed to properly weigh the opinion of treatment provider David Crane, LPCC.  Doc. 23 at 9-26.

For the reasons discussed below, the Court finds that the ALJ erred in failing to adequately explain why she included some but not all of Dr. Fink's limitations regarding Ms. Vargas's ability to do work-related mental activities.   As such, this case requires remand.

A.    **Relevant Mental Health Evidence**

1.    **Richard Fink, Ph.D.**

On January 10, 2018, Ms. Vargas presented to Richard Fink,Ph.D., for a consultative mental status examination.  Tr. 704-06.  Ms. Vargas reported an eight year history of medical problems and that she had since lost her job, her car, her house and "pretty much everything." Tr. 705.  Ms. Vargas reported rotating between friends for somewhere to live.  *Id.*  Ms. Vargas reported having been in long-term physically and emotionally abusive relationships, which are over, and that she has one son who lives with her from time to time.  *Id.*  Ms. Vargas stated she suffers from anxiety for which she takes Buspirone.  *Id.*  She also reported she had been on antidepressants but that they caused side effects that she did not like.  *Id.*

Ms. Vargas told Dr. Fink that she spends her time reading the Bible, that she cries a lot and is probably difficult to get along with.  *Id.*  She reported a history of responding angrily and violently and having been in jail and on probation a few times for getting into fights with her ex-boyfriend's ex-girlfriend.  *Id.*

On mental status exam, Dr. Fink noted that (1) Ms. Vargas was oriented to time, place and person; (2) her short-term memory was moderately impaired; (3) she was able to complete serial sevens albeit quite slowly; (4) she was able to name objects in the room; (5) she was able to accurately repeat an 8 word sentence; (6) she could follow a simple three step instruction; and (7) she could write a sentence of her own choosing but could not accurately copy a geometric design. Tr. 705. Dr. Fink administered the Rey 15 items test to assess motivation and Ms. Vargas got 15 items correct. *Id.* Dr. Fink also administered the mini-mental status II standard version and Ms. Vargas obtained a low score of 41. *Id.* Dr. Fink noted that "[i]t was slightly lower for the extended version where her story memory was extremely poor." *Id.*

Dr. Fink concluded that Ms. Fink was suffering from, *inter alia*, anxiety disorder and major depression. Tr. 706. He assessed her functional capacity to do mental work-related tasks as follows:

> Her abilities to understand and remember detailed or complex instructions does appear to be currently or at least moderately impaired. She may need multiple repetitions. She does not do all that well with short simple ones, she sometimes just responds without having listened to the nature of the task. Her ability for sustained concentration and task persistence is moderately impaired. She can carry out instructions if she knows what needs to be done but may have trouble attending and concentrating for very long. Her abilities for social interactions are somewhat impaired by her personality style and the way she deals with stress. She may have trouble interacting with the public and could get into conflicts with coworkers. Abilities to adapt to changes in the work place, be aware of normal hazards, react appropriately are moderately impaired.

Tr. 706.

The ALJ accorded significant weight to Dr. Fink's functional assessment and found his assessment to be supported by his examination and his own clinical observations. Tr. 23. The ALJ concluded that "Dr. Fink's opinion is consistent with the evidence as a whole showing that

the claimant's mental health impairments warrant limitations but do not completely preclude her from working."  *Id.*

### 2. **Kathleen Padilla, Ph.D.**

On January 17, 2018, nonexamining State agency psychological consultant Kathleen Padilla, Ph.D., reviewed the medical evidence record at the initial level of review.  Tr. 76-78. Dr. Padilla prepared a Psychiatric Review Technique ("PRT")[5] and rated the degree of Ms. Vargas's functional limitation in the area of understanding, remembering or applying information as *moderate*; the area of interacting with others as mild, in the area of maintaining concentration, persistent and pace as *moderate*, and in the area of adaptation as *moderate*.  Tr. 74.  Dr. Padilla also prepared a Mental Residual Functional Capacity Assessment ("MRFCA")[6] in which she found in Section I that Ms. Vargas had *moderate limitations* in her ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities in a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest

---

[5] "The psychiatric review technique described in 20 CFR §§ 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.  The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  SSR 96-8p, 1996 WL 374184, at *4.

[6] The MRFCA form instructions explain: "The questions below help determine the individual's ability to perform sustained work activities.  However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describe how the evidence supports each conclusion.  This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation).  Any other assessment information deemed appropriate may be recorded in the MRFC – Additional Explanation text box."  Tr. 75.  Case law discussing "Section I" and "Section III" therefore remains relevant.

periods; (6) respond appropriately to changes in the work setting; and (7) set realistic goals or make plans independently of others.  Tr. 76-78.

In Section III, Dr. Padilla assessed that

[t]otality of evidence supports the assessment that claimant retains the capacity to understand, remember, and carry out simple instructions, attend and concentrate sufficiently to complete a routine work day without significant interruptions from psychologically-based symptoms, exercise reasonable judgment, interact appropriately with coworkers, supervisors, and the general public on an incidental basis, and respond appropriately to changes in a routine work setting.

Tr. 78.

The ALJ accorded some weight to Dr. Padilla's assessment.  Tr. 24.  The ALJ explained that Dr. Padilla's opinion was not fully consistent with the evidence available at the hearing level.  She further stated that "[v]iewing the evidence in the light most favorable to the claimant, the undersigned finds that additional workplace limitations are warranted."  *Id.*

### 3.     <u>Kari Allen, CNP</u>

On November 13, 2017, Ms. Vargas reestablished care at Sunrise Medical Group, P.C., where she saw Kari Allen, CNP.  Tr. 728-29.  Ms. Vargas reported increased abdominal pain, bloating symptoms and chronic constipation and was seeking pain management.  *Id.*

On March 5, 2018, CNP Kari Allen completed a *Medical Assessment of Ability To Do Work-Related Activities (Non-Physical)* on Ms. Vargas's behalf.[7]  Tr. 709.  She indicated that Ms. Vargas suffered from sleep disturbances due to pain and other causes and suffered from fatigue as a result of her impairments.  Tr. 709.  CNP Allen assessed that Ms. Vargas had slight limitations in her ability to (1) maintain attention and concentration for extended periods (*i.e.,* 2-

---

[7] On this same date, CNP Allen also completed a *Medical Assessment of Ability To Do Work-Related Activities (Physical).*  Tr. 708.  On March 26, 2019, CNP Allen completed a second *Medical Assessment of Ability To Do Work-Related Activities (Physical)* on Ms. Vargas's behalf.  Tr. 789.

hour segments); (2) perform activities within a schedule; (3) maintain regular attendance and be punctual within customary tolerance; (4) maintain physical effort for long periods of time without a need to decrease activity or pace, or to rest intermittently; (5) sustain an ordinary routine without special supervision; and (6) complete a normal workday without interruptions from pain or fatigue based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods. *Id.* CNP Allen indicated her assessment was based on observations and records. *Id.*

The ALJ accorded limited weight to CNP Allen's assessment.[8] Tr. 23. The ALJ explained that the assessment was completed in checked box forms and were not supported by explanation or reference to any medical records of exams. Tr. 23-24.

### 4.   David Crane, LPCC

On March 13, 2018, Ms. Vargas presented to LPCC David Crane and reported that she was struggling with anxiety and depression as well as stress and chronic pain. Tr. 711-12. Ms. Vargas reported having been in physically and emotionally abusive relationships. *Id.* LPCC Crane diagnosed anxiety disorder, unspecified and post-traumatic stress disorder, chronic. *Id.* LPCC Crane began treatment and recommended continuing psychotherapeutic intervention. *Id.*

Ms. Vargas saw LPCC Crane on three more occasions in which he noted that Ms. Vargas continued to struggle with depression and anxiety.[9] Tr. 713-14, 715-16, 717-18. On March 27, 2018, LPCC Crane administered a mental status exam and noted, *inter alia*, that Ms. Vargas appeared "wary, attentive, communicative, casually groomed, and . . . anxious." Tr. 715. He

---

[8] The ALJ's discussion was primarily focused on CNP Allen's assessments related to Ms. Vargas's ability to do *physical* work-related activities. Tr. 23-24.

[9] Ms. Vargas's attorney reported at the Administrative Hearing that Ms. Vargas continues to received mental health counseling from Mesa Counseling, where she sees LPCC Crane's wife, and that despite repeated requests for the records, they have not been sent. Tr. 38.

noted Ms. Vargas had normal speech and that her language skills were intact.  *Id.*  He noted that

Ms. Vargas had signs of moderate depression, that she was teary, and that her body posture and

attitude conveyed an underlying depressed mood.  *Id.*  LPCC Crane noted that Ms. Vargas

exhibited restlessness, irritability, and trembling, and that she was fidgety.  Tr. 715.  Finally

LPCC Crane noted that "[a] short attention span is evident."  *Id.*

      On May 1, 2018, LPCC Crane completed a *Medical Assessment of Ability To Do Work-*

*Related Activities (Mental)* on Ms. Vargas's behalf.  Tr. 742-43.  He assessed that Ms. Vargas

had *moderate limitations* in her ability to (1) remember locations and work-like procedures;

(2) understand and remember very short and simple instructions; (3) carry out very short and

simple instructions; (4) sustain an ordinary routine without special supervision; (5) make simple

work-related decisions; (6) ask simple questions or request assistance; and (7) maintain socially

appropriate behavior and adhere to basic standards of neatness and cleanliness.  *Id.*

      LPCC Crane also assessed that Ms. Vargas had *marked limitations* in her ability to

(1) understand and remember detailed instructions; (2) carry out detailed instructions;

(3) maintain attention and concentration for extended periods of time; (4) perform activities

within a schedule, maintain regular attendance and be punctual within customary tolerance;

(5) work in coordination with/or proximity to others without being distracted by them;

(6) complete a normal workday and workweek without interruptions from psychologically based

symptoms and to perform at a consistent pace without unreasonable number and length of rest

periods; (7) interact appropriately with the general public; (8) accept instructions and respond

appropriately to criticism from supervisors; (9) get along with coworkers or peers without

distracting them or exhibiting behavioral extremes; (10) respond appropriately to changes in the

work place; (11) be aware of normal hazards and take adequate precautions; (10) travel in

unfamiliar places or use public transportation; and (12) set realistic goals or make plans independently of others.  *Id.*

LPCC Crane explained that Ms. Vargas has serious issues with memory and understanding instructions, limited concentration and scheduling issues, serious social limitations and major anxiety due to severe and recurrent post-traumatic stress disorder.  *Id.*

The ALJ accorded little weight to LPCC Crane's assessment.  Tr. 24.  The ALJ explained that LPCC Crane's assessment was asserted in a checked box form and provided very little explanation in support.  *Id.*  The ALJ further explained that LPCC Crane's marked limitations were inconsistent with the limited treatment in the medical evidence of record of Ms. Vargas's mental health impairments and the medical evidence record showing generally unremarkable mental status exams and indicating that claimant's mental health impairments warrant limitations but do not completely preclude the claimant from working.  *Id.*

### 5.      Mark McGaughey, Ph.D.

On May 16, 2018, nonexamining State agency psychological consultant Mark McGaughey, Ph.D., reviewed the medical evidence record at reconsideration.  Tr. 89. Dr. McGaughey stated that "[c]laimant had MER come in from a LPCC.  She is going through therapy and is doing better as of 03/27/18."  *Id.*  Dr. McGaughey assessed that "[t]he initial assessment of an unskilled PRTF/MRFC is appropriate and affirmed at this time.  Evidence does not suggest a decline or decrease in function."  *Id.*

The ALJ accorded some weight to Dr. McGaughey's assessment.  Tr. 24.

**B.**     **The ALJ Failed To  Properly Account for Dr. Fink's Moderate Assessments of Ms. Vargas's Ability To Do Work-Related Mental Activities**

Assessing a claimant's RFC is an administrative determination left solely to the Commissioner "based on the entire case record, including objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an administrative finding).[10]  In assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record.  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2) and (3), 416.945(a)(2).  The ALJ must consider and address medical source opinions and give good reasons for the weight accorded to a treating physician's opinion.  20 C.F.R. §§ 404.1527(b), 416.927(b)[11]; SSR 96-8p, 1996 WL 374184, at *7.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.   Further, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."  *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7).  When the ALJ fails to provide a narrative

---

[10] The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017.  82 Fed. Reg. 5844, 5845, 5867, 5869.

[11] The rules in this section apply for claims filed *before* March 27, 2017.  20 C.F.R. §§ 404.1527, 416.927.

discussion describing how the evidence supports each conclusion with citations to specific medical facts and nonmedical evidence, the court will conclude that his RFC assessment is not supported by substantial evidence. *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review. *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished).

Ms. Vargas argues that the ALJ gave significant weight to the opinion of consultative examiner Dr. Richard Fink but failed to account for all of his assessed moderate functional limitations in the RFC. Doc. 23 at 9-12. Ms. Vargas argues that, instead, the ALJ improperly engaged in picking and choosing from Dr. Fink's assessed limitations and failed to incorporate limitations in the areas of understanding and remembering, persistence, attendance and social interaction. *Id.* Ms. Vargas further argues that the ALJ's finding that she could perform "SVP 1 or 2 level work" does not adequately taken into account all of Dr. Fink's assessed limitations of her ability to do work-related mental activities. *Id.* Finally, Ms. Vargas argues that the ALJ's limiting her to occasional interactions with the general public, coworkers, and supervisors only addresses the quantity of her interactions and not the quality of those interactions. *Id.*

The Commissioner contends that there is no requirement in the regulations for a "direct correspondence" between an RFC finding and a specific medical opinion. Doc. 27 at 5-6, citing *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). The Commissioner further contends that limiting a claimant to SVP-1 or SVP-2, *i.e.,* unskilled work, as a shorthand to account for specific mental abilities has been widely upheld in the Tenth Circuit.[12] *Id.* The Commissioner

---

[12] The Commissioner cites *Berumen v. Colvin*, 640 F. App'x 763, 766 (10th Cir. 2016) (unpublished) ("And the ALJ in *Vigil*, like the ALJ here, took those difficulties into account in formulating the RFC by limiting the skill level of the claimant's work to an SVP of one or two.") (citing *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015)); and *Jaramillo v. Colvin*, 576 F. App'x 870, 875 (10th Cir. 2014) (unpublished) ("[A] limitation to unskilled work or, as the ALJ phrased it here, 'unskilled tasks,' could be used as shorthand for the specific mental abilities described in SSR 85-15, and that is how we read the ALJ's decision in this case.").

asserts that Plaintiff's pointing to a different interpretation of Dr. Fink's opined functional limitations is "of no moment," even if that interpretation could be considered equally well-supported as the ALJ's, which the Commissioner does not concede. *Id.*

Here, it is undisputed that the ALJ accorded significant weight to Dr. Fink's assessed limitations of Ms. Vargas's ability to do work-related mental activities. It is also undisputed that Dr. Fink assessed moderate limitations in each of the four mental RFC categories, *i.e.*, understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Doc. 706. The question, therefore, is whether the ALJ, having accorded Dr. Fink's opinion significant weight, adequately accounted for Dr. Fink's assessed limitations in the RFC. In other words, to the extent the ALJ's RFC conflicts with Dr. Fink's opinion, did the ALJ adequately explain why certain limitations were not adopted. The Court concludes she did not.

To begin, the Court agrees that limiting a claimant to SPV 1 or 2 level work *may*, in some instances, account for a claimant's mental impairments.[13] For instance, in *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015), the Tenth Circuit held that a claimant's moderate mental limitations in concentration, persistence, and pace were sufficiently taken into account by a restriction to unskilled work. *Vigil*, 805 F.3d at 1204. In that case, the ALJ found at step three that the claimant was moderately limited in the ability to maintain concentration for extended periods. *Id.* at 1203. At the "more detailed" step four assessment of the claimant's RFC, the ALJ found some evidence indicating that the claimant had some problems with concentration, persistence, and pace "such that [he] could not be expected to perform complex tasks." *Id.* The ALJ further found that "the findings of a normal ability to recall items on immediate recall, and an ability to

_____

[13] The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568, unskilled work corresponds to an SVP of 1 to 2; semi-skilled work corresponds to an SVP of 3 to 4; and skilled work corresponds to an SVP of 5 to 9 in the DOT. SSR 00-4P, 2000 WL 1898704, *3.

spell words forward, as well as finding of normal thought processes, indicate[d] that Vigil

retain[ed] enough memory and concentration to perform at least simple tasks." *Id.* at 1203-04.

The Court reasoned that the ALJ's RFC limiting claimant to unskilled work was appropriate in

that case because the Social Security Administration's Program Operations Manual System

indicated that the capacity to perform unskilled work includes the ability to maintain attention for

extended periods of two-hour segments, but that concentration is "not critical." *Id.* at 1204.  The

Court further reasoned that unskilled work generally requires only the following: (1)

"[u]nderstanding, remembering, and carrying out simple instructions"; (2) "[m]aking judgments

that are commensurate with the functions of unskilled work—*i.e.,* simple work-related

decisions"; (3) "[r]esponding appropriately to supervision, co-workers and usual work

situations"; and (4) "[d]ealing with changes in a routine work setting." *Id.*  Therefore, because

the claimant's moderate limitation in his ability to maintain concentration for extended periods

did not impact the basic demands of unskilled work, the Court concluded that the evidence in the

record regarding claimant's mental status supported the ALJ's RFC determination that limiting

him to perform unskilled work would adequately account for his moderate limitations in

concentration, persistence, and pace. *Id.*

By comparison, however, in *Jaramillo v. Colvin*, 576 F. App'x 870 (10th Cir. 2014)

(unpublished), the Tenth Circuit found that a limitation to simple, routine repetitive and unskilled

tasks did not clearly relate the moderate limitations assessed by the consultative psychiatrist.[14]

Citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), the *Jaramillo* court explained that

---

[14] The Commissioner cites *Jaramillo* for the premise that "unskilled tasks" could be used as a shorthand for the specific mental abilities described in SSR 85-15.  Doc. 27 at 7.  However, the Commissioner fails to present the full context of the Tenth Circuit's discussion and its ultimate holding that limiting the claimant to unskilled work in the face of certain assessed moderate mental limitations (carry out instructions, attend and concentrate, and work without supervision) was insufficient.  *Jaramillo,* 576 F. App'x at 876-77.

"a moderate impairment is not the same as no impairment at all," and instead supports a conclusion that the individual's capacity to perform the activity is impaired and must be related with sufficient precision in an RFC finding.  *Jaramillo*, 576 F. App'x at 876.

Similarly here, Dr. Fink's assessed limitations of Ms. Vargas's ability to do work-related mental activities were not only in her ability to maintain attention for extended periods, but in her ability to understand, remember, and carry out short simple instructions, in her ability to appropriately interact with the public and coworkers, and in her ability to adapt to changes in the work place.  Tr. 706.  These limitations are not addressed in *Vigil* and the Commissioner has failed to cite to any authority establishing that unskilled work functions as an umbrella for, or otherwise is not impacted by, these moderate limitations.[15]  Moreover, the ability to understand, remember and carry out short simple instructions, respond appropriately to criticism from supervisors, get along with coworkers, respond appropriately to changes in a routine work setting, and be aware of normal work hazards are critical for performing unskilled work.  *See* POMS DI 25020.010.B.3.b, c, k, l, m and n – *Mental Abilities Critical for Performing Unskilled Work*.

The ALJ, therefore, in assessing that Ms. Vargas could perform SPV 1 or 2 level work, may have adequately addressed certain of Ms. Vargas's limitations in concentration, persistence and pace, but her assessment fails to address at all Ms. Vargas's moderate limitation with respect to her ability to understand, remember and carry out simple instructions.  Further, while the ALJ separately assessed that Ms. Vargas could *occasionally* interact with the general public, co-workers, and supervisors, the ALJ's analysis failed to address the critical question given the

---

[15] The Commissioner cites *Berumen v. Colvin*, 640 F. App'x 763 (10th Cir. 2016) (unpublished).  However, this case, similar to *Vigil*, addressed a moderate limitation in the area of concentration, persistence and pace.  640 F App'x at 766.

medical evidence record at issue here, *i.e.*, whether Ms. Vargas could interact *appropriately*.[16] [17] In other words, *less* interaction does not necessarily make for *appropriate* interaction.  *See* SR 96-9p, 1996 WL 374185, at *9 (July 2, 1996) (explaining that unskilled work generally requires, *inter alia*, the ability to respond *appropriately* to supervision) (emphasis added); *see also generally* 20 C.F.R. 404.1545(c) (explaining that a limited ability in responding appropriately to supervision, co-workers, and work pressures in a work setting may reduce ability to do past work and other work); POMS DI 22511.005.B (describing assessment of functional areas within parameters of appropriateness, independence, sustainability, and quality and effectiveness); POMS DI 25025.010.B (providing example of a claimant who required excessive supervision, had poor work quality, and punched another employee who he perceived was making fun of him supported a finding of inability to respond appropriately to supervision, coworkers, and work situations).  And last, the ALJ only partially addressed Dr. Fink's assessed moderate limitation in the area of adaptation in the RFC, *i.e.,* the ALJ assessed that Ms. Vargas could tolerate occasional change in the work setting, but makes no mention of Dr. Fink's assessed moderate limitation regarding Ms. Vargas's ability to be aware of *normal* hazards and react appropriately.[18]

---

[16] LPCC Crane assessed that Ms. Vargas had moderate and marked limitations in her ability to (1) maintain socially appropriate behavior; (2) interact appropriately with the general public; (3) accept instructions and respond appropriately to criticism from supervisors; and (4) get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Tr. 742-43.

[17] Dr. Fink noted that Ms. Vargas reported a history of responding angrily and violently and had been in jail and on probation *a few times* for getting into fights.  Tr. 705.  Ms. Vargas also testified that she was not able to get along with her previous co-workers and that she had recently gotten into a physical fight with a woman who had parked near her house.  Tr. 55.

[18] The ALJ limited Ms. Vargas's exposure to unprotected heights and hazardous machinery.  Tr. 20.

In light of the ALJ's failure to adopt certain of Dr. Fink's assessed limitations, the question then is whether the ALJ adequately explained why they were not adopted.  Here, after according Dr. Fink's opinion significant weight, the ALJ concluded that his opinion was consistent with the evidence as a whole showing that claimant's mental health impairments warrant limitations but do not completely preclude her from working.  Tr. 23.  In support of her conclusion, the ALJ cites to a handful of medical records in which Ms. Vargas's psychiatric status was noted as appropriate.  *Id.*  For example, the ALJ cites to medical notes from October and November 2017 in which Ms. Vargas presented to Southwest Gastroenterology for stomach-related issues (Tr. 668, 672), and an April 2018 medical note when she presented to CNP Allen for medical care following an allergic reaction after eating popcorn (Tr. 721).  Tr. 23.  These respective exam notes indicated Ms. Vargas had good judgment, was oriented to person, place and time, had a normal mood and affect, and "no depression."  *Id.*  The ALJ also cites LPCC Crane's March 27, 2018, mental status exam (Tr. 715) wherein he noted that Ms. Vargas was attentive, communicative, had normal speech and that her language skills were intact.  *Id.*

The ALJ's citations, however, fail to support her conclusion that Dr. Fink's opinion was consistent with the evidence as a whole showing that claimant's mental health impairments warrant limitations but do not completely preclude her from working.  To begin, nowhere in Dr. Fink's opinion does he opine or conclude that Ms. Vargas's moderate limitations "do not completely preclude her from working."  Thus, the ALJ wrongly attributes this opinion to Dr. Fink.  Second, it is not clear to the Court how notations included as part of a standardized "review of systems" at non-mental health related medical appointments indicating that Ms. Vargas was oriented to person, place and time and presented with a normal mood and affect support the ALJ's conclusion that Dr. Fink's opinion was consistent with the "evidence as a

---

whole."[19]  Moreover, the ALJ's citation to LPCC Crane's March 27, 2018, mental status exam to support her conclusion is the epitome of picking and choosing because she relies only on selected portions of the mental status exam that support her conclusion.  Indeed, the mental status exam the ALJ relies upon for normal mental status also indicates that Ms. Vargas was wary, anxious, had signs of moderate depression, was teary, exhibited restlessness, irritability, trembling, was fidgety, and that a short attention span was evident.  Tr. 715.  The ALJ completely ignored these observations and notations.

In sum, the Court concludes that the ALJ, having accorded significant weight to Dr. Fink's opinion, failed to explain why she rejected certain of Dr. Fink's moderate limitations while adopting others when making her RFC assessment.  This is error.  *Haga v. Astrue,* 482

---

[19] Notably, the ALJ does not cite or discuss other medical *opinion* evidence related to Ms. Vargas's ability to do work-related mental activities to support her conclusion that Dr. Fink's opinion was consistent with other medical evidence that demonstrated Ms. Vargas was not precluded from working.  *See generally* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (explaining that the more consistent a medical opinion is with the record as a whole the more weight is given to that opinion).  The Court notes here that Dr. Fink's and LPCC Crane's assessments are consistent in finding that Ms. Vargas was moderately impaired in her ability to understand, remember and carry out short simple instructions, and that Ms. Vargas was impaired, either moderately or markedly, in the areas of concentration, persistence and pace, social interactions, and adaptation.  Tr. 706, 742-43.  (Having determined that the ALJ erred in failing to explain why she adopted certain of Dr. Fink's moderate limitations while rejecting others, the Court does not address Ms. Vargas's argument that the ALJ failed to properly weigh LPCC Crane's opinion.)

As for other opinion evidence related to Ms. Vargas's ability to do work-related mental activities, the ALJ's discussion regarding the nonexamining State agency psychological consultant opinion evidence is insufficiently articulated.  Dr. Padilla assessed certain moderate limitations in Section I of the MRFCA, but nonetheless assessed in Section III of the MRFCA that Ms. Vargas could perform the basic mental demands of competitive, remunerative *unskilled* work, *i.e.,* understand, carry out, and remember simple instructions, interact appropriately with coworkers, supervisors, and the general public on an incidental basis, and respond appropriately to changes in a routine work setting.  Tr. 78.  Nonexamining State agency psychological consultant Dr. McGaughey concurred in this assessment as reconsideration.  Tr. 89.  The ALJ accorded their opinions *some weight* and explained that "additional workplace limitations are warranted."  Tr. 24.  The ALJ, however, did not assess additional workplace limitations, but assessed that Ms. Vargas could perform unskilled work (SVP 1-2 level work) thereby adopting their Section III opinions in whole.  This contradiction renders the ALJ's discussion insufficiently articulated.  That aside, Dr. Padilla's findings at Section I of the MFRCA that Ms. Vargas had moderate limitations in her ability to respond appropriately to changes in the work setting is consistent with Dr. Fink's assessment.  Tr. 78, 706.

Finally, CNP Kelly's functional assessment of Ms. Vargas's ability to do work-related mental activities was based on Ms. Vargas's pain and fatigue related to her physical impairments and not based on her mental impairments of anxiety and depression.  Tr. 709.

F.3d 1205, 1208 (10th Cir. 2007) (an ALJ must explain why even moderate limitations are rejected when they conflict with the ALJ's RFC assessment*); Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (the record must demonstrate that the ALJ considered all of the evidence and must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects).  Further, because the ALJ failed to provide an adequate discussion describing how the evidence supports her conclusion, the Court concludes that the RFC is not supported by substantial evidence.  *Southard*, 72 F App'x at 784-85.

### C.     Remaining Issues

The Court will not address Ms. Vargas's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### IV.  Conclusion

For the reasons stated above, Ms. Vargas's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 23) is **GRANTED.**

_____

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**